## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARITA MELISSA FOSTER, | : | CIVIL NO. 1:24-cv-01289 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANK BISIGNANO,[1] | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I.  Introduction.

In this social security action, Plaintiff Carita Melissa Foster ("Foster"),

proceeding pro se, seeks judicial review of the final decision of the Commissioner

of Social Security ("Commissioner") denying her claim for supplemental security

income under Title XVI of the Social Security Act.  We have jurisdiction under 42

U.S.C. §§ 405(g) and 1383(c)(3).  While we sympathize with Foster's situation, for

---

[1] Frank Bisignano is now the Commissioner of Social Security, and he is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

the reasons set forth below, we will affirm the Commissioner's decision and enter

judgment in favor of the Commissioner.


## II.  Background and Procedural History.[2]

We refer to the transcript provided by the Commissioner. *See docs. 11–1* to

*11–13*. On January 17, 2017, Foster filed an application for supplemental security

income alleging that she has been disabled since October 20, 2006. *See Admin. Tr.*

at 168–173.   After the Commissioner denied her claim at the initial and

reconsideration levels of administrative review (*id.* at 70–77), Foster requested an

administrative hearing which took place on March 7, 2019 (the "first hearing") (*id.*

at 22).  The Administrative Law Judge ("ALJ") who presided over the first hearing

ultimately found that Foster was not disabled and denied her application for

benefits. *Id.* at 22–33.

Foster did not have the benefit of legal counsel during the first hearing or her

subsequent appeal ("prior appeal") of the ALJ's decision following the first

hearing. *Id.* at 675–78.  Magistrate Judge Carlson, who handled the prior appeal,

pointed out concern that Foster appeared to have a "profound degree of confusion"

about her claims. *Id.* at 670–72.  Ultimately, the case was remanded by the parties'

---

[2] We recite only those facts that bear on Foster's claims.

consent. *Id.* at 675–78.  Magistrate Judge Carlson "strongly encourage[d] . . . Foster to seek the assistance of counsel as she further pursue[d] this claim on remand" and stated his "confiden[ce] that the Commissioner will take appropriate steps on remand to assist . . . Foster in developing her claim if she [was] unable to secure counsel." *Id.* at 677–78.

On April 13, 2023, Foster—proceeding pro se—as well as a vocational expert testified at a telephone hearing before ALJ Jarrod Tranguch ("ALJ Tranguch"). *Id.* at 569–81.  Despite the above efforts of Magistrate Judge Carlson to instill in Foster an understanding of the importance of legal counsel, Foster did not secure counsel.  According to the ALJ, he took the following actions to develop her claims and assist her in securing counsel:

> (1) He spoke to Foster about her decision to cancel her independent medical assessment due to lack of transportation. *Id.* at 569.
>
> (2) He collected information about treatment sources and obtained corresponding records. *Id.* at 569, 570.
>
> (3) "[A]n attorney adviser from [the ALJ's] office spoke to the claimant and had a detailed conversation with her about the basis of the remand, and the District Court's suggestion she obtain legal representation" and "explained . . . that as the present claim is a Title XVI claim, that this decision will address from the application date of January 17, 2017 to the" date of the decision.[3] *Id.* at 570.

---

[3] "Despite this being explained, [Foster] indicated she did not recall filing a new application and does not understand why the case is not addressing back to 2010, when she appealed every unfavorable decision." *Admin. Tr.* at 570.  Upon

(4) After learning that Foster was unsuccessful in securing legal
representation off the list provided from the Administration,[4]
the ALJ's office provided phone numbers for Lackawanna Pro
Bono and North Penn Legal Services.  *Id.*

(5)  During the April 13, 2023 hearing (the "second hearing"),
the ALJ "had a detailed discussion with the claimant regarding
how a representative could assist her." *Id.* at 570 n.2.  "Despite
the detailed discussion, [Foster] asked to proceed without a
representative, and stated that she understood she was waiving
her right to representation." *Id.*

On June 20, 2023, ALJ Tranguch denied Foster's claim for benefits. *Id.* at
581. Foster appealed ALJ Tranguch's decision to the Appeals Council, which
denied her request for review. *Id.* at 559–68.  This makes ALJ Tranguch's decision
the final decision of the Commissioner subject to judicial review by this Court.

In August 2024, Foster, proceeding pro se, began this action by filing a
complaint seeking review of the Commissioner's decision denying his claim. *See
doc. 1.*  In the section of the form complaint titled "Statement of Claim," Foster

---

learning of her continued confusion, the attorney adviser reiterated the
recommendation for legal representation. *Id.*

[4] Foster told the attorney adviser that "she received the list from the
Administration of representatives she can contact for legal representation two
times, but that everyone she contacts advises they are unable to assist her." *Admin.
Tr.* at 570.  Foster also reported that contacting the local bar association to find an
attorney was not fruitful. *Id.*  Foster explained that one "problem she [was]
encountering[] [was] that she want[ed] an attorney willing to meet with her face to
face, but that some of the representatives are not local." *Id.*

placed a checkmark in the box next to the statement "The Commissioner's decision

was based on legal error." *Id.* at 3.  In the space below this statement, Foster wrote:

> They keep saying my disability was that [I] said was high
> blo[o]d pressure, anemia, diabetes & anxiety, not true.  My
> disability has and always were Back pain.  Severe back pain, I
> found out like I think last year my hip had arthritis, my back
> pain, Back pain was & is my issue that's been my claim since I
> first filed down in Silver Spring MD to Scranton PA[.]  The
> other thing was added as I was diagnosed with it. So they
> lying[.]

*Id.* (errors in original).  Foster requests that we "modify the [Commissioner's]

decision and grant monthly maximum insurance benefits to the plaintiff,

retroactive to the date of initial disability." *Id.* at 3–4.

The parties consented to proceed before a magistrate judge pursuant to 28

U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 9*.  The

Commissioner filed an answer and a certified transcript of the administrative

proceedings. *Docs. 10, 11*.  The parties filed briefs (*see docs. 15, 18, 19*), and this

matter is ripe for decision.

## III.  Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's

application for benefits, "the court has plenary review of all legal issues decided by

the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103.  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Foster is disabled, but whether substantial evidence supports the Commissioner's finding that he is not disabled and whether the Commissioner correctly applied the relevant law.

## B. Initial Burdens of Proof, Persuasion, and Articulation.

To receive benefits under Title XVI of the Social Security Act, a claimant must demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); 20 C.F.R. § 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

Unlike with disability insurance benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act. *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017). Supplemental Security Income "is a federal income supplement

program funded by general tax revenues (not social security taxes)" "designed to help aged, blind or other disabled individuals who have little or no income." *Id.*

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920(a).  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 416.945(a)(1).  In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV.  The ALJ's Decision.

On June 20, 2023, ALJ Tranguch denied Foster's claim for benefits. *Admin. Tr.* at 569–81.  He proceeded through the five-step sequential-evaluation process.

### A.  Step One.

At step one of the sequential-evaluation process, the ALJ found that Foster had not engaged in substantial gainful activity since January 17, 2017, the date she filed her application for benefits. *Id.* at 573.

### B.  Step Two.

At step two of the sequential-evaluation process, ALJ Tranguch found that Foster had "degenerative disc disease of the lumbar spine[,]" a severe impairment. *Id.*  ALJ Tranguch also found that Foster had the following non-severe impairments: depression, anxiety, anemia, hypertension, diabetes, COVID-19, and asthma. *Id.*

The ALJ explained that Foster "receives routine care" for her anemia, hypertension, and diabetes. *Id.*  The ALJ also stated that Foster's asthma is stable "with pulmonary examinations consistently reflecting normal auscultation, no wheezing or rales, and no shortness of breath." *Id.*  And, according to the ALJ, Foster's COVID-19 "does not meet the durational requirements." *Id.*  In sum, the ALJ found that Foster's anxiety, anemia, hypertension, diabetes, COVID-19, and

asthma do not "have more than a minimal effect on [Foster's] ability to perform basic work activities[.]" *Id.*

As to Foster's depression and anxiety, ALJ Tranguch found[5] that Foster had (1) no limitation in understanding, remembering or applying information; (2) no limitation in interacting with others; (3) a mild limitation in concentrating, persisting, or maintaining pace; and (4) no limitation in adapting or managing herself. *Id.* at 574.  In so deciding, ALJ Tranguch gave "partial weight" to the state agency mental assessment of John N Grutkowski, Ph. D. ("Dr. Grutkowski").[6] *Id.*

---

[5] When "mental impairments are at issue, additional inquiries are layered on top of the basic five-step disability analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 202 (3d Cir. 2019).  The regulations set forth a "special technique" used for evaluating mental impairments. *See* 20 C.F. R. § 416.920a.  As part of that "special technique," a claimant's degree of functional limitation is rated in four broad functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* at § 416.920a(c)(3).  A claimant's degree of limitation in these functional areas is rated using "the following five-point scale: None, mild, moderate, marked, and extreme." *Id.* at § 416.920a(c)(4).  The ratings in these four broad functional areas are used at Step 2 to determine if the claimant has a severe mental impairment, and if the claimant has a severe mental impairment, the ratings are also used at Step 3 to determine if the claimant's severe mental impairment meets or equals a listed mental disorder. *Id.* at § 416.920a(d).

[6] On March 27, 2017, the regulations regarding opinion evidence shifted. *See Mercado v. Kijakazi*, 629 F. Supp. 3d 260, 279 (M.D. Pa. 2022).  Under the old regulations, "ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Id.* at 280.  Further, under the old regulations, the ALJ assigned the weight he or she gave to a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.967(c).  Because Foster's application predates the shift in regulations, ALJ Tranguch applied the old regulations.

Dr. Grutkowski had found that Foster's anxiety and depression were not medically determinable impairments. *Id.* at 574–75.  ALJ Tranguch, however, "gave [Foster] every benefit of the doubt as supported by the record and found her mental impairments non-severe[,]" and thus gave Dr. Grutkowski's opinion only partial weight. *Id.* at 575.

Foster also alleged a diagnosis of neuropathy. *Id.* at 575.  ALJ Tranguch, however, determined that this impairment was not medically determinable. *Id.*  He noted Foster's visit to the emergency room with complaints of numbness. *Id.*  But he also noted the neurologic examination during that hospital visit "was normal, noting no focal deficit, normal sensory, normal motor, and normal speech." *Id.* "Further, when she was seen one month later in September 2019 her neurological examination was again normal." *Id.*  And "there is no indication of [Foster] treating with a neurologist or an endocrinologist relevant" to the alleged neuropathy. *Id.*  In sum, ALJ Tranguch determined that the singular diagnosis of neuropathy (by the emergency room doctor) "appears to be based on her subjective complaints." *Id.* Accordingly, ALJ Tranguch found that Foster's alleged impairment of neuropathy "is not medically determinable." *Id.*

### C. Step Three.

At step three of the sequential-evaluation process, ALJ Tranguch found that Foster did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 103–08. Specifically, ALJ Tranguch considered Listings 1.15 and 1.16 in connection with Foster's lumbar degenerative disc disease. *Id.* at 575–76. ALJ Tranguch found that Foster "does not meet . . . listing [1.15] as there is no MRI or EMG studies documenting compromise of a nerve root" and "the record does not reflect a documented need for a walker, bilateral cane, bilateral crutches, or a wheeled and seated mobility device using both hands; or an inability to use one or both upper extremities to independently initiate, sustain, and complete work-related activities involving fine and gross movements." *Id.* ALJ Tranguch also found that Foster "does not meet . . . listing [1.16] as there is no imaging or operative report consistent with compromise of the cauda equina with lumbar spinal stenosis." *Id.* at 576.

### D. The RFC.

ALJ Tranguch then determined that Foster had the RFC to do medium work with some limitations. *Id.* at 576. Specifically, Foster "can frequently balance, stoop, kneel, crouch, crawl, use ramps and climb stairs; and can occasionally climb ladders, ropes, or scaffolding." *Id.*

In making this RFC assessment, ALJ Tranguch considered Foster's testimony at the first hearing and at the April 13, 2023 hearing, the medical records and treatment notes, and the state agency physical assessment. *Id.* at 577–79.

Regarding Foster's testimony, ALJ Tranguch concluded that Foster's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Foster's] statement concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" *Id.* at 578. The ALJ pointed to diagnostic testing which "does not support a finding that her impairment prohibits functioning within the [RFC][,]" and certain normal examinations and findings. *Id.* ALJ Tranguch also noted:

> [Foster's] treatment for her lumbar degenerative disc disease is limited, and when she does treat, clinical examination and diagnostic testing does not support an inability to function within the [RFC]. Notably, there is no indication that the claimant has been referred for an orthopedic consultation or lumbar MRI. Also, none of her physical examinations note any strength deficits, positive straight leg raise testing, atrophy, swelling, or edema of her lower extremities, abnormal sensation, or limited lumbar or lower extremity range of motion.

*Id.* at 578.

ALJ Tranguch also considered the opinion evidence.[7]  Specifically, Louis S. Bonita, MD ("Dr. Bonita") conducted a state agency physical assessment of Foster. *Id.*  Dr. Bonita found Foster's diabetes, high blood pressure, anemia, a stomach ulcer, acid reflux, and back pain to all be non-severe impairments. *Id.* at 578–79. ALJ Tranguch found that the opinion regarding her anemia, diabetes, and hypertension to be consistent with the longitudinal record. *Id.* at 579.  But ALJ Tranguch found that Dr. Bonita's conclusion that the back pain is non-severe is "not consistent with the two lumbar x-rays which note abnormal findings." *Id.* Accordingly, ALJ Tranguch gave Dr. Bonita's opinion "some weight." *Id.*

### E. Step Four.

At step four of the sequential-evaluation process, the ALJ found that Foster had no past relevant work. *Id*. at 579.

### F. Step Five.

At step five of the sequential-evaluation process, considering Foster's age, education, work experience, and RFC, as well as the testimony of the vocational expert, the ALJ found that there were jobs—such as kitchen helper, bagger, and

---

[7] The opinion of a James L. Davis, MD, from July 21, 2003, was also in the record. *Admin. Tr.* at 579.  ALJ Tranguch did not assess its weight, however, because the opinion was "from more than fifteen years prior to the application date[.]" *Id.*

sandwich maker—that exist in significant numbers in the national economy that Foster could perform. *Id.* at 580.

***

In sum, ALJ Tranguch concluded that Foster has not been disabled since January 17, 2017 (which is the date she filed her application). *Id.* at 581.  Thus, he denied Foster's claim for benefits. *Id.*


## V.  Discussion.

The local rules of court address the requirements for the argument section of a Social Security plaintiff's brief:

> The argument shall be divided into sections separately addressing each issue and shall set forth the contentions of plaintiff with respect to each issue and the reasons therefor. Each contention must be supported by specific reference to the portion of the record relied upon and by citations to statutes, regulations and cases supporting plaintiff's position.

M.D. Pa. L. R. 83.40.4(c).  Foster's brief fails to comply with this rule. *Doc. 15.* Nevertheless, given that Foster is proceeding pro se, we liberally construe her brief to raise the following issues: (1) ALJ Tranguch did not account for her arthritis, asthma, or back pain in his opinion (*id.* at 1–2 ("Judge Transguch's Assistant Maryanne I kept in the loop of everything that was going on with me, I informed her when the day I found out I had arthritis, . . . Judge Transguch & Maryanne his assistance knew that I had contracted Covid 19 as a result, I now have asthma,

never ever had asthma, got it from Covid.") (errors in original)); and (2) the RFC does not account for Foster's inability to sit or stand for long periods of time (*id.* ("[Judge Tranguch] was talking to the vocational expert with hypertheticals, it came to the last one & with his knowledge of how my legs, feet, & hands gets tingling, sensations he ask if someone has to take several breaks throughout the working day what say you, vocational expert then said that person is non employable which would be true, because I can't sit for long periods of time & standing on my legs for long periods of time . . . makes my legs swell") (errors in original)). These arguments are all conclusive and do not contain any references to the record. *See generally id.*

The Commissioner's brief, however, argues that "the ALJ reasonably found that [Foster] did not prove she was disabled during the relevant period" given the Social Security Act's "stringent" definition of disability. *Doc. 18* at 6. The Commissioner points to regulations and case law to support the contention that a "[p]laintiff's description of her symptoms, standing alone, is never enough to establish an impairment or disability[,]" "[n]or does a mere diagnosis establish functional limitations." *Id.* at 8. Moreover, the Commissioner points out that "[a]n individual is not required to be symptom-free to work." *Id.* The Commissioner also argues that the RFC accounted for Foster's impairments and was only crafted after thorough consideration of the record. *Id.* at 10. The Commissioner points out

that ALJ Tranguch summarized Foster's testimony and treatment records. *Id.* at

10–12.  According to the Commissioner, Foster is asking "the Court to reweigh the

evidence in order to reach a decision that is more favorable to her," although case

law requires the court not to "undermine the [ALJ's] decision so long as the record

provides substantial support for that decision." *Id.* at 13 (citing *Malloy v. Comm'r

of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009)).

    In her reply brief, Foster asserts that she "can not climb no ropes, scafolding

or none of that & the reason as to why I am not on physical therapy as I stated

before, they were talking of giving me some kind of shot in my spine & the side

effects could mean me not being able to move, at all." *Doc. 19* (errors in original).

Foster also asserts that she cannot do her previous work of telemarketing as it

would require her to sit for long periods of time. *Id.*  She also claims she cannot

stand for long periods of time and, therefore, she cannot perform the jobs ALJ

Tranguch cited in step five of the sequential evaluation. *Id.* ("they would have me

stand for long periods of time making sandwiches, bagging or dishwashing.").

Foster also says she is "fighting for . . . what [she] ha[s] already put in from years

of . . . working" and says that "they are not being truthful" by stating her

application date is in 2017.[8] *Id.*  In addition, Foster begs for "help" citing her race, health issues, financial situation, and the death of her husband. *Id.*

While we sympathize with Foster's situation, we sit in review of the ALJ's decision.  It is not our job to "substitute our own judgment" or that of the plaintiff "for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

Here, ALJ Tranguch cited the record and explicitly accounted for Foster's degenerative disc disease of the lumbar spine, anemia, hypertension, diabetes, asthma, COVID-19, depression, and anxiety. *See Admin. Tr.* at 573–79.  Foster argues that ALJ Tranguch fails to account for her arthritis, but she points to no medical records regarding this diagnosis. *Doc. 15* at 1.  And although we liberally construe Foster's filings as a pro se litigant, we do not dig through the voluminous record in search of support for her passing arguments. *See Loewen v. Berryhill*, 707 Fed. Appx. 907, 908 (9th Cir. 2017) (memorandum opinion) (citing *Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) ("We do not address this finding because [the claimant] failed to argue this issue with any specificity in his briefing.")); *Indep. Towers of Wash. v. Washington*, 350 F.3d

---

[8] This seems to show that Foster still does not fully understand her application for SSI—rather than disability insurance—benefits and that she filed a new application in 2017 rather than a continuation of previous applications.  We echo Magistrate Judge Carlson's concern at her confusion which he found evident prior to the 2021 remand, but at this procedural posture, after great efforts were made to ensure she understood her right to an attorney and her persistent choice to proceed pro se, we will not remand on this basis.

19

925, 929 (9th Cir. 2003) ("When reading [the appellant's] brief, one wonders if

[it], in its own version of the 'spaghetti approach,' has heaved the entire contents

of a pot against the wall in hopes that something would stick.  We decline,

however, to sort through the noodles in search of [the appellant's] claim. . . . we

cannot 'manufacture arguments for an appellant'") (quoting *Greenwood v. Fed.*

*Avaiation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994)); *see also U.S. v. Dunkel*, 927

F.2d 944 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in

briefs."); *see also U.S. v. Winkelman*, 548 F. Supp. 2d 142, 150 (M.D. Pa. Mar. 10,

2008) ("We are not pigs searching for truffles and are unwilling to search through

the massive record that has been developed in this case to find evidence of these

alleged violations.").

  As to Foster's argument that ALJ Tranguch failed to properly consider her

back pain, ALJ Tranguch did discuss it extensively when crafting the RFC. *See*

*Admin. Tr.* at 577–78.  ALJ Tranguch ultimately found, however, that Foster's

alleged symptoms "are not entirely consistent with the medical evidence"—

specifically, the "intensity, persistence and limiting effects of these symptoms." *Id.*

at 578.  In so doing, ALJ Tranguch cited Foster's testimony, diagnostic testing, and

clinical examination. *Id.*  Clearly, Foster wishes that ALJ Tranguch had crafted a

more conservative RFC based on her alleged symptoms and a different reading of

the medical record.  But the ALJ was not required to do so.  ALJ Tranguch

explained his reasoning in finding that Foster's self-reported symptoms were not entirely consistent with the record and, therefore, why he would not rely on such symptoms as indicative of the necessary limitations. In doing so, he satisfied his obligation to provide "a clear and satisfactory explication of the basis on which" his decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Accordingly, we conclude that substantial evidence supports ALJ Tranguch's RFC.

Similarly, although Foster disagrees with ALJ Tranguch's RFC as it relates to her ability to sit or stand, ALJ Tranguch also accounts for these limitations in his RFC. To the extent Foster relies on her alleged neuropathy, the ALJ evaluated the medical record and concluded that such impairment was not "medically determinable"; in other words, ALJ Tranguch found that there were not sufficient medical records to support such a diagnosis. *Admin. Tr.* at 575. In so doing, ALJ Tranguch cited the emergency room visit "where [Foster] presented complaining of bilateral thigh numbness with pins and needles, numbness to the center of her lips, and right foot numbness" but that the "neurologic examination was normal" during that visit and the follow up one month later. *Id.* ALJ Tranguch also cites the lack of treating records as to this impairment. *Id.* ALJ Tranguch thus satisfied his burden at step two. To the extent Foster disagrees with the RFC's limitations to her sitting and standing for other reasons, as discussed above, ALJ Tranguch explained his consideration of all her impairments. Again, it is not our job to

substitute our own judgment, or Foster's, for ALJ Tranguch's. *See Zirnsak*, 777 F.3d at 611. Accordingly, we find no error as to the RFC's limitations of sitting and standing.

## VI. Conclusion.

For the foregoing reasons, we will affirm the decision of the Commissioner. An appropriate order follows.

**<u>S/Susan E. Schwab</u>**
Susan E. Schwab
United States Magistrate Judge